(*Circuit Court of Cook County.*)

## People of the State of Illinois ex rel. Dennis McCutcheon

### vs.

## Mallory, Superintendent of the State Reformatory of Pontiac.

### (December 22, 1904.)

1. INDICTMENT FOR ASSAULT WITH INTENT TO MURDER—PLEA OF GUILTY—SENTENCE FOR "BURGLARY, ETCETERA"—HABEAS CORPUS. The petitioner was indicted for an assault with intent to murder, and upon a plea of guilty was sentenced for the crime of "burglary, *etcetera*," to the Pontiac reformatory. Upon a petition for *habeas corpus*, *held* that this was a case where a party is indicted, pleads guilty to one crime and is sentenced by the court for another and a different and greater

crime, and that the court had no jurisdiction to enter such judgment, and that the prisoner must be discharged.

2. "BURGLARY, ETCETERA." There is no crime within the statute known as "burglary, *etcetera*."

3. SENTENCE FOR CRIME NOT UPON THE RECORD. Where a man is sentenced for a crime that does not appear upon the record, the jurisdiction of the court is lacking.

4. SENTENCE FOR CRIME TO REFORMATORY WHERE RECORD DOES NOT SHOW AGE OF PRISONER. The presumption of law is that the record being silent the prisoner was twenty-one years of age when he was sentenced to the reformatory. The relator was sentenced to the reformatory when there was nothing on the face of the record to show that his age was even inquired into, the law presuming him to be a man of twenty-one years of age when in fact he was eighteen. *Held*, that it is jurisdictional as to the right of the court to send the relator to the reformatory, and that this was a fatal objection to the right of the warden of the reformatory to hold the relator under such a mittimus.

5. AMENDMENT OF MITTIMUS TO SHOW AGE OF PRISONER. Relator was sentenced to the reformatory, the record not showing his age. Two years after he had been in the reformatory the relator was brought into court and the mittimus amended *nunc pro tunc* to show his age. *Held*, that it is going too far to hold that after a party had been in the penitentiary for two years he can be brought up and the judgment amended in his case by oral evidence, or that it can be corrected on account of an alleged misprision of the clerk after service of this kind, and *held* that when that amendment was made the court was without jurisdiction, more than two years having elapsed, the party having served a portion of his sentence, and the court having no power to go back and make that legal which was illegal during the two years he was serving.

Petition for a writ of habeas corpus. Gen. No. 258,124. Heard before Judge Murray F. Tuley.

The facts are stated in the opinion.

*W. G. Anderson,* for petitioner.

TULEY, J.:—

In this case I dislike very much to interfere with the sentence of a prisoner under a penitentiary offense. The court ought to distinguish between error in the proceedings of the trial court and jurisdiction. It will scarcely be contended

that on an indictment for larceny, or a plea of guilty for larceny, a man might be found guilty of murder and sent to the penitentiary for life.

I recollect a case of Judge McAllister's discharging a party once who was tried by the court without a jury and sent to the penitentiary. He held that the court having no jurisdiction to try the party—there was a trial without a jury—that the judgment of the court to send him to the penitentiary was void.

In this case there was an indictment for an assault with intent to murder; the party plead guilty to it, the court proceeded to sentence him for the crime of burglary to the penitentiary. I do not know whether it was for the crime of burglary, or for the crime of "*etcetera.*" (Reading). I do not know what that means, I do not know of any crime within the statute known as "burglary, *etcetera.*"

It is a plain case where a party is indicted, plead guilty to one crime and is sentenced by the court to the Pontiac reformatory for another and a different and a greater crime. Now, has the court any such power? As I say, if he had been charged with larceny, the court might, if this had been sustained, have sentenced him for the crime of murder, sentenced him for life. I think the court had no jurisdiction to enter such judgment. It had jurisdiction to enter any judgment that was authorized by the crime for which he was charged, but not for another crime and another and different crime.

The court will take notice that the crime of burglary is punishable by a very much heavier punishment than the crime of assault with intent to murder. It may be a very great difference in the kind of service. I would like to know how at Pontiac, which they will determine,—whether they will determine to hold this man until he serves out the maximum punisment for assault and intent to murder, or are they going to hold him until he serves out the maximum punishment for the crime of burglary?

Counsel says it is for the Pontiac reformatory directors to determine which crime he is there for. I think that it is a pretty difficult thing for this court to determine, or any judge

to determine. I do not know that the directors of Pontiac
have more wisdom than the judges have.

The language of the judgment is emphatic. He is sentenced
for the crime of "burglary, *etcetera,*" and they have no right
to construe that to mean something else; because the assault
with intent to commit murder is found in the *mittimus* and
recites that he plead guilty to that charge, they have no right
to say that the court shall not sentence him for the crime of
burglary.

I do not know what may have possessed the judge there;
he may have thought the crime of burglary came within the
crime of assault with intent to commit murder,—assault with
intent to commit murder while in the act of burglary. I do not
know what might have influenced the judge to do that, we are
outside, we can only go upon the *mittimus* itself and where
they sentence a man for a crime that does not appear upon
the record I think the jurisdiction of the court is lacking.

There is another thing in regard to this. Admit that that
might be a *misprision* of the clerk,—I do not see how it can
be held to be a *misprision* of the clerk. A *misprision* is a
mistake, but you cannot say that it is a *misprision* of the clerk
when the court definitely and specifically on its record charges
a certain crime, that it is a mistake that the clerk writes it
that way, *non constat,* that the man was sentenced for bur-
glary, as the *mittimus* says.

I think too, it is jurisdictional as to the right, of the court
to send him to Pontiac. The age should appear upon the
record anyhow; the age appears nowhere on the record sub-
mitted to this court, except that the court, two years after
this man had been serving a sentence for the crime of bur-
glary, has him brought back here and amends his record to
show that he is eighteen years of age and he had been serving
two years in Pontiac under the presumption that he was twen-
ty-one years of age. Now, I know of no rule that will justify
the court in holding that the criminal court had evidence be-
fore it of the age of this party, and they sent him to Pontiac
because he was eighteen years of age; the presumption of law

is that the record being silent, he was twenty-one years when he was sent there, and in that respect the court had no jurisdiction to amend its judgment.

As stated, if it appeared to the court, his whole record being before the court, that there was anything upon the memorandum of the clerk or even on the judgment to show the age of this party, there might be a different question raised, but there is nothing in this record to show that the question of age was ever inquired into by the court. He is held there upon a *mittimus* that in my opinion is void on the face of the whole record, and he is indicted for one crime, pleads guilty and is sentenced for another and a greater crime. He is sent to Pontiac and when the law presumes that he is a man of twenty-one years of age, when in fact he is eighteen years of age, there is nothing on the face of the record to show that his age was ever inquired into. Both are fatal objections to the right of the warden to hold him under any such *mittimus*.

Now this *mittimus*,—two years afterwards the party is brought into court and this *mittimus*, which is a copy of the judgment, is amended, and it is amended *nunc pro tunc* as of the day on which he has already served two years. Now, to hold that after a party has been in the penitentiary for two years you can bring him up and amend the judgment in his case by oral evidence, or that you can correct it on account of an alleged *misprision* of the clerk after service of this kind, I think is going too far.

The cases cited here hold that the judgment in a criminal case can be amended for a *misprision* of a clerk, accidental slip of the pen, and misreading of a sentence, misreading even of the offense for which the party was indicted, where it is apparent that there might have been misreading, as, for instance, in one case that was cited the party was indicted for rape, the clerk read it as an assault and intent to commit rape. That was a case where it might be held to be a misreading of the clerk, but no clerk could misread the crime of burglary for an assault with intent to kill.

When that amendment was made, the court was without

jurisdiction; more than two years had elapsed, the party had served a portion of his sentence and the court has no power to go back and make that legal which was illegal during the two years he was serving.

The petitioner will have to be discharged